# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANITE STATE INSURANCE COMPANY, | Case No.  1:14-cv-00531-SAB |
| Plaintiff, | ORDER GRANTING DEFENDANTS CHRISTINE BAKER AND UNINSURED EMPLOYERS BENEFIT TRUST FUND'S MOTION TO DISMISS |
| v. | |
| BARRY HALAJIAN, et al., | (ECF No. 7, 15, 18, 22, 23) |
| Defendants. | |

Plaintiff Granite State Insurance Company ("Granite State") filed this diversity action seeking declaratory relief on April 15, 2014.  Currently before the Court is Defendants Christine Baker and Uninsured Employers Benefits Trust Fund ("UEBTF") motion to dismiss.

## I.

## PROCEDURAL HISTORY

On April 15, 2014, Plaintiff Granite State filed this action against Defendants Barry Halajian, UEBTF, and Christine Baker.  (ECF No. 1.)  Defendants Baker and UEBTF filed a motion to dismiss on May 23, 2014.[1]  (ECF No. 7.)  Plaintiff filed an opposition to the motion to

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge.  (ECF Nos. 12, 13, 16, 17.)

1  dismiss on June 11, 2014. [2]  (ECF No. 15.)  Defendants filed a reply on June 17, 2014.  (ECF No.

2  18.)

3       The Court heard oral arguments on Defendants' motion to dismiss on June 25, 2014.

4  (ECF No. 20.)  Counsel James Wagoner and Noura Kawar appeared for Plaintiff and counsel

5  Kumani Armstrong and Evan Adams appeared for Defendants Baker and UEBTF.  Id.  On July

6  3, 2014, Plaintiff filed a supplemental opposition; and on July 9, 2014, Defendants filed a

7  supplemental reply.  (ECF No. 22, 23.)  Having considered the moving, opposition and reply

8  papers, the declarations and exhibits attached thereto, arguments presented at the June 25, 2014

9  hearing, as well as the Court's file, the Court issues the following order.

## II.

## COMPLAINT ALLEGATIONS

12       Plaintiff Granite State issued a Workers Compensation and Employers Liability Policy to

13  Defendant Halajian for the period of June 5, 2012 through June 5, 2013.  (Compl. ¶ 8, ECF No.

14  1.)  On May 8, 2013, Plaintiff provided Defendant Halajian with an offer to renew the policy for

15  the period of June 5, 2013 through June 5, 2014.  (Id. at ¶ 9.)  The offer was e-delivered and an

16  invoice and payment schedule were mailed on that same date.  (Id.)  The total premium for the

17  policy was $28,165.00 with the first premium payment of $14 083.00 due by June 5, 2013.  (Id.)

18       Defendant Halajian did not tender payment on the policy by June 5, 2013, so a Notice of

19  Cancellation was mailed on June 20, 2013.  (Id. at ¶¶ 9, 10.)  The Notice of Cancellation

20  informed Defendant Halajian that the policy would be cancelled for non-payment unless the

21  premium of $14,083.00 was paid before July 11, 2013.  (Id. at ¶ 10.)  No payment was received

22  and the policy was cancelled effective June 5, 2013.  (Id. at ¶ 10, 11.)

23       On or about August 15, 2013, Jerry Ledger, an employee of Defendant Halajian, was

24  electrocuted while working in the scope and course of his employment causing serious damage

25  and injury to both of his eyes, his left ear, face, head and brain, and causing sleep disturbance

26  and emotional injury.  (Id. at ¶ 12.)  On September 19, 2013, Mr. Ledger filed a Worker's

27

28  [2] The Court denies Plaintiff's motion for judicial notice as the subjects for which judicial notice is requested are not necessary to decide this motion.

1  Compensation Claim for which Plaintiff denied coverage.  (Id. at ¶¶ 13, 14.)  Mr. Ledger filed an

2  Application for Adjudication of a Worker's Compensation Claim with the Division of Worker's

3  Compensation, Worker's Appeal Board, about September 23, 2013.  (Id. at ¶ 13.)

4      Plaintiff seeks a declaratory judgment that it has no duty to defend or indemnify

5  Defendant Halajian for any portion of Mr. Ledger's Workmen's Compensation claim.  (Id. at 4.[3])

6  **III.**

7  **LEGAL STANDARD**

8      **A.**    **Rule 12(b)(1)**

9      Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of an action for lack of

10  subject matter jurisdiction.  A jurisdictional attack under Rule 12(b)(1) may be facial or factual.

11  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack challenger

12  the allegations in the complaint, asserting they are insufficient to invoke federal jurisdiction.

13  Safe Air for Everyone, 373 F.3d at 1039.  A factual attack challenges truth of the allegations that

14  would otherwise invoke federal jurisdiction.  Id.

15      **B.**    **Rule 12(b)(6)**

16      Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

17  the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

18  complaint must contain "a short and plain statement of the claim showing that the pleader is

19  entitled to relief." Fed. R. Civ. P. 8(a)(2).  "[T]he pleading standard Rule 8 announces does not

20  require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

21  unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

22  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a

23  complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-

24  79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

25  conclusory statements, do not suffice."  Id. at 678.

26      In deciding whether a complaint states a claim, the Ninth Circuit has found that two

27

28  [3] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1   principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint

2   "may not simply recite the elements of a cause of action, but must contain sufficient allegations

3   of underlying facts to give fair notice and to enable the opposing party to defend itself

4   effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair

5   to require the defendant to be subjected to the expenses associated with discovery and continued

6   litigation, the factual allegations of the complaint, which are taken as true, must plausibly

7   suggest an entitlement to relief.  Starr, 652 F.3d at 1216.

8                                             **IV.**

9                                         **ANALYSIS**

10      Defendants Baker and UEBTF move to dismiss Plaintiff's claims against them on the

11  grounds that 1) as a state agency they are immune from suit, and therefore, the Court lacks

12  subject matter jurisdiction; and 2) the complaint fails to state a cause of action against Defendant

13  UEBTF because no actual case or controversy exists between these defendants and Plaintiff.

14  (Defs.' Mot. to Dismiss 2, ECF No. 7.)  Plaintiff counters that Defendant UEBTF is not entitled

15  to Eleventh Amendment immunity and an actual case or controversy exists to state a claim.

16  (Mem. of P. & A. in Opp. to Mot. to Dismiss 9-16, ECF No. 15.)

17      **A.      Defendant UEBTF**

18      The California Legislature has created "a complete system of workers' compensation"

19  under the States police power.  Cal. Lab. Code § 3201.  Employers are strictly liable for their

20  employees' workers' compensation claims under this system.  In re Lorber Industries of

21  California, 357 B.R. 617, 619 (C.D. Cal. 2006) (citing Cal. Lab. Code § 3600).  "To ensure that

22  injured workers actually receive compensation, the California statute requires employers to either

23  purchase workers' compensation insurance from private insurance agencies or to self-insure,

24  subject to a certificate of consent from the California Director of Industrial Relations (Director)."

25  Id. at 619-20 (citing Cal. Lab. Code §§ 3700(a) and (b)).  The workers' compensation system is

26  administered by the Department of Industrial Relations ("DIR").  Cal. Lab. Code §56.  The DIR

27  is a state agency entitled to Eleventh Amendment Immunity.  Montana v. Goldin, 394 F.3d 1189,

28  1195 (9th Cir. 2005).

                                              4

1    In 1971, the California legislature created what was then the Unemployed Employer's

2   Fund to provide a source of funding for injured workers whose employers had not obtained

3   worker's compensation insurance or failed to qualify as self-insurers.   DuBois v. Workers'

4   Comp. Appeals Bd., 5 Cal.4th 382, 388-89 (1993).   The program was designed to be funded

5   from penalties which were assessed against uninsured employers as well as from state tax

6   revenues.  DuBois, 5 Cal.4th at 389.

7    California law allows an employee whose employer has failed to provide Workers'

8   Compensation benefits to bring an action in civil court against his employer and to apply for

9   benefits from the UEBTF.  Cal. Lab. Code § 3715(a).  "[The UEBTF was] created to ensure that

10   workers who happen to be employed by illegally uninsured employers are not deprived of

11   workers' compensation benefits, and [was] not created as a source of contribution to insurance

12   carriers, or self-insured, or legally insured employers."   Cal. Lab. Code § 3716(b).   "If the

13   employer fails to pay the compensation . . . or fails to furnish the bond required . . . within a

14   period of 10 days after notification of the award, the award, upon application by the person

15   entitled thereto, shall be paid by the director from [the UEBTF]."  Cal. Lab. Code § 3716(a).  An

16   employer's failure to pay within 10 days of notification of the award is a condition precedent to

17   the employee making a demand for payment upon the UEBTF.  DuBois, 5 Cal.4th at 389-90.

18    The UEBTF "is purely a statutory creature, and to render it liable for payment the

19   statutory conditions must be strictly met."  Symmar, Inc. v. Workers' Comp. Appeals Bd., 135

20   Cal.App.3d 65, 71-72 (1982).  The statutory conditions require "that there be an award against an

21   employer who has failed to secure the payment of compensation and a failure by the employer to

22   pay the award or to furnish the bond required."  Symmar, Inc., 135 Cal.App.3d at 71.

23       **B.      Defendant UEBTF is Entitled to Eleventh Amendment Immunity**

24    "Under the Eleventh Amendment, a state is immune from suit under state or federal law

25   by private parties in federal court absent a valid abrogation of that immunity or an express

26   waiver by the state."  Hibbs v. Dep't of Human Resources, 273 F.3d 844, 849 (9th Cir. 2001)

27   (citations omitted).  "[A] governmental entity may be an arm of the state protected by sovereign

28   immunity where the state is functionally liable, even if not legally liable, on money judgments

5

1  against the state entity." <u>Stoner v. Santa Clara County Office of </u>Education, 502 F.3d 1116, 1122

2  (9th Cir. 2007).  State agencies and state officers who act on behalf of the State are also entitled

3  to immunity.  <u>Natural Resources Defense Council v. California Dept. of Transportation</u>, 96 F.3d

4  420, 422 (9th Cir. 1996).  When an action is in essence one to recover money from the state, the

5  state is the real party in interest and is entitled to invoke sovereign immunity even though

6  individual state officials are nominal defendants.  <u>Regents of the University of California v. Doe</u>,

7  519 U.S. 425, 429 (1997).

8         "To determine whether a governmental agency is an arm of the state, the following

9  factors must be examined: whether a money judgment would be satisfied out of state funds,

10  whether the entity performs central governmental functions, whether the entity may sue or be

11  sued, whether the entity has the power to take property in its own name or only the name of the

12  state, and the corporate status of the entity." <u>Mitchell v. Los Angeles Community College Dist.</u>,

13  861 F.2d 198, 201 (9th Cir. 1988).  In making this determination, the court looks to the way the

14  entity is treated under state law.  <u>Mitchell</u>, 861 F.2d at 201.  The Supreme Court has held that

15  courts are to look at the legal liability that would attach to the state and not to who will pay the

16  judgment in determining if the entity is entitled to immunity.  <u>Regents of the University of</u>

17  <u>California</u>, 519 U.S. at 431.  It is whether the judgment would be enforceable against the state

18  that is of importance in evaluating the relationship between the State and the entity being sued.

19  <u>Id.</u> at 430.

20         1.      <u>Whether the Funds are State Funds</u>

21         While Plaintiff argues that it is undisputed that any judgment would not be satisfied out

22  of state funds, but would be satisfied from the "special trust fund account" which is not state

23  property (ECF No. 15 at 9), Defendant UEBTF counters that the fund itself is a hybrid of general

24  fund and employer assessments, (ECF No. 18 at 4.)  Defendants cite to the legislative history to

25  support their argument that the fund is comprised of state property.

26         This first factor is the predominant factor to be considered in the immunity analysis.

27  <u>Durning v. Citibank, N.A.</u>, 950 F.2d 1419, 1424 (9th Cir. 1991).  To assess whether Defendant

28  UEBTF is a State entity entitled to Eleventh Amendment immunity we look to the "nature of the

1  entity created by state law." <u>Regents of the University of California</u>, 519 U.S. at 429.  "When a

2  state entity is structured so that its obligations are its own special obligations and not general

3  obligations of the state, that fact weighs against a finding of sovereign immunity under the arm

4  of the state doctrine." <u>Durning</u>, 950 F.2d at 1425-26.

5        Initially, Plaintiff argues that the language establishing the Worker's Compensation

6  Administration Revolving Trust Fund as "a special account in the State Treasury" and the

7  UEBTF as a "special fund in the State Treasury" supports the position that the UEBTF are not

8  public funds.  (ECF No. 15 at 9-10.)  Defendants counter that the UEBTF is authorized to

9  advance expenses to the Worker's Compensation Revolving Fund; the Director may furnish

10 benefits to injured employees on a discretionary basis; the funds have been used for other

11 purposes related to the mandate of Labor Code section 50.5; all of the administrative expenses

12 involved in administration of the fund are drawn from the Worker's Compensation Revolving

13 Fund; and the UEBTF is inextricably linked to state budgetary decisions as to the allocation of

14 state resources to show that the UEBTF is entitled to immunity.  (ECF No. 18 at 4-5.)

15       The Worker's Compensation Administration Revolving Trust Fund was created as a

16 special account in the State Treasury.  Assemb. Bill 3000, Ch. 1124 § 39 (Cal. 2002).  These

17 funds are to be used for the administration of the Worker's Compensation Program (commencing

18 with Section 3200), activities financed pursuant to section 3702.5 and for no other purpose

19 except as determined by the legislature.  <u>Id.</u>  The costs of the program are shared on a

20 proportional basis between the General Fund and the employer assessments which only account

21 for twenty percent of the costs.  <u>Id.</u>

22       The UEBTF was created as a special fund in the State Treasury and is funded through

23 surcharges on all employers in proportion to their payroll.  Cal. Lab. Code §§ 62.5(a) and (f)(1).

24 The total amount of the surcharges are not to exceed the amounts reasonably necessary to carry

25 out the purposes of the Worker's Compensation program.  Cal. Lab. Code § 62.5(f)(1).  The

26 director assigns investigative and claims' adjustment services on uninsured employers injury

27 cases within the department or by contracting the services with the State Compensation

28 Insurance Fund.  Cal. Lab. Code § 3716.1(b).  The administrative costs of these services are

1  reimbursed from the Worker's Compensation Fund and the nonadministrative costs are
2  reimbursed from the UEBTF.  Id.  In this instance, the administrative costs of the UEBTF are
3  paid out of state funds and the nonadministrative costs are covered by the fund itself.

4  Initially, the Court considers those cases which have addressed the character of the
5  UEBTF.  In In re George, 361 F.3d 1157 (9th Cir. 2004), the Ninth Circuit considered "whether
6  the people of California have a continuing claim for reimbursement of what they paid an injured
7  worker, that survives bankruptcy, against the George's for failure to secure workers'
8  compensation insurance."  Id. at 1159.  In considering whether the obligation was a tax, the court
9  found that it is a "reimbursement of an expense the government bears in paying the employer's
10  workers' compensation obligation."  Id.; see also In re Slali, 282 B.R. 225, 231 (C.D. Cal. 2002)
11  (UEBTF claim for reimbursement is nondischargeable in bankruptcy as it is an excise tax under
12  11 U.S.C. § 523(a)(1)(A)).

13  The California Supreme Court considered whether the UEBTF was required to pay a
14  penalty for the unreasonable delay in payment to an injured worker in DuBois, 5 Cal.4th at 385.
15  The Court held that "sections 3716 and 3716.2 defining the obligations and limiting the liability
16  of the [UEBTF], do not permit imposition of any penalty mandated by section 5814 against the
17  [UEBTF], even for its own unreasonable delay in paying valid claims for workers'
18  compensation."  Id. at 385.  The court considered the history of the statute which established the
19  UEBTF.

20      Pursuant to the "plenary power" the Constitution has granted to the Legislature
21      "to create, and enforce a complete system of workers' compensation" (Cal. Const.,
        art. XIV, § 4), the Legislature has created a statutory scheme requiring all
22      employers to secure the payment of workers' compensation to injured workers,
        either by obtaining insurance coverage of their liability or by obtaining a
23      certificate of consent to self-insure issued by the Director of Industrial Relations.
        (§ 3700 et seq.) The right to workers' compensation benefits is wholly statutory
24      and is not derived from common law. (Graczyk v. Workers' Comp. Appeals Bd.
        (1986) 184 Cal.App.3d 997, 1002–1003, 229 Cal.Rptr. 494.)

25      In 1971, the California Legislature created the [UEBTF] in order to provide a
26      source of funds for injured workers whose employers have failed or refused either
        to obtain workers' compensation insurance coverage or to qualify as self-insurers
27      for the employers' liability. (§ 3716, subd. (b); see Flores v. Workmen's Comp.
        Appeals Bd. (1974) 11 Cal.3d 171, 173, 113 Cal.Rptr. 217, 520 P.2d 1033;
28      Jenkins v. Workmen's Comp. Appeals Bd. (1973) 31 Cal.App.3d 259, 263, 107
        Cal.Rptr. 130.) The program was "designed to be financed from various penalties

which may be assessed against an uninsured employer," as well as from state tax revenues. (1 Herlick, Cal. Workers' Compensation Law (4th ed. 1990) § 3.20, p. 3–18; see also, id., § 11.9, p. 11–8.)

DuBois, 5 Cal.4th at 388-389.

The DuBois court considered a number of factors, including "the general immunity afforded governmental entities (such as the [UEBTF]) by Government Code section 818" in determining that penalties could not be assessed against the UEBTF. Id. at 398-99. California Government Code section 818 provides that "a public entity is not liable for damages awarded. . . primarily for the sake of example or by way of punishing the defendant."

From the foregoing the Court concludes that courts generally recognize the funds expended by Defendant UEBTF to be public funds. See also Andreini v. Superior Court, 71 Cal.Rptr.2d 153, 162 (1998) ("When public funds have been expended to provide compensation to an employee of an uninsured employer who sustains injury in the course of performing work commissioned by the hirer, it would be manifestly unfair to relieve the hirer of any obligation to reimburse the taxpayers for the compensation they have paid.").

The Court also finds the situation here to be substantially similar to In re Lazar, 237 F.3d 967 (9th Cir. 2001), which reversed a lower court finding that the California Underground Storage Tank Cleanup Fund ("Cleanup Fund") was not an arm of the state. The Cleanup Fund was established by a comprehensive act to address the problem of leaking petroleum underground storage tanks and the threat they pose to public safety. In re Lazar, 237 F.3d at 971. Similar to the UEBTF, the Cleanup Fund is financed by a fee imposed on all underground storage tank owners for each gallon of gasoline or petroleum product stored in a tank. Id. at 972. Owners and operators of petroleum underground storage tanks may file a claim against the Cleanup Fund to recover costs associated with the cleanup of unauthorized releases. Id. The bankruptcy trustee in Lazar brought a petition to require the State Board to reinstate claims against the Cleanup Fund. Id. The district affirmed a bankruptcy court order, that in relevant part, affirmed the finding that the Cleanup Fund is not an arm of the state capable of invoking Eleventh Amendment immunity. Id. at 974.

The Ninth Circuit reversed the finding that the Cleanup Fund was not an arm of the State.

9

In deciding the first factor, whether the claims would be paid out of state funds, the Ninth Circuit found it gave little guidance.  Id. at 983.  The court considered that the claims would be paid only from the fund and the state treasury is not liable which would normally weigh against a finding of immunity, however there is no statute specifically protecting the state treasury from a court judgment against the Cleanup Fund.  Similarly here, there is no statute that specifically protects the state treasury from a court judgment against the UEBTF.

The Lazar court also considered that California law provides that when the Cleanup Fund sunsets all of its liabilities will be transferred to the state's general fund.  Id. at 983 (citing Cal. Gov. Code § 16346 (Whenever "a special fund in the State Treasury is abolished, all of its assets, liabilities, and surplus shall" be transferred to a successor fund, or if no successor fund is named, "the General Fund shall be deemed to be the successor fund for purposes of this section.")).  Here, if the UEBTF was abolished all the assets and liabilities would be transferred to the General Fund pursuant to section 16346.

In this action, Plaintiff is seeking declaratory relief, the practical result of which would be to have this Court determine that Defendant UEBTF must pay for the injuries suffered by Mr. Ledger.  As in Lazar, to the extent that Plaintiff seeks to have this Court find that Mr. Ledger's claim must be paid by the UEBTF, this appears to weigh more heavily in favor of finding that Defendant UEBTF is an arm of the state.  Based upon the foregoing the Court finds that the UEBTF are public funds.  This factor weighs in favor of finding that the UEBTF is an arm of the state.  While this factor is generally the predominant factor, the Court finds that the first factor is a close finding and it will be given less weight.  In re Lazar, 237 F.3d at 983 (citing Belanger v. Madera Unified Sch. Dist., 963 F.2d 248, 254 (9th Cir. 1992)).

2.      Whether Defendant UEBTF Performs Central Governmental Functions

Plaintiff contends that the fund merely exists to pay claims of uninsured private employers and therefore does not serve any governmental function.  (ECF No. 15 at 12.)  Defendants counter that the UEBTF is an integral part of the worker's compensation system that is a central government function carried out for the benefit of the citizens of California.  (ECF No. 18 at 3.)

1    In determining if the entity provides a central government function, we evaluate whether

2    the entity addresses a matter of statewide, rather than local or municipal, concern, and the extent

3    to which the state exercises centralized government control over the entity.  Beentjes v. Placer

4    County Air Pollution Control Dist., 397 F.3d 775, 782 (9th Cir. 2005).

5    Prior to the creation of the UEBTF there was a significant problem that injured workers

6    faced long delays in obtaining payment and were often without funds during the critical period of

7    their disability.  Flores, 11 Cal.3d at 174 (superseded by statute on other grounds).  To remedy

8    this situation the Legislature passed a bill creating the UEBTF and establishing a comprehensive

9    procedure for the operation of the UEBTF.  Id. at 174-75.  The establishment of the UEBTF was

10   "to fulfill the public policy declared in article XX, section 21 of the California Constitution that

11   mandates the creation of a system of workmen's compensation that, in the words of the

12   Constitution, will be so administered to 'accomplish substantial justice in all cases expeditiously,

13   inexpensively, and without encumbrance of any character." Jenkins, 31 Cal.App.3d at 263.

14   The UEBTF was created "to ensure that workers who happen to be employed by illegally

15   uninsured employers are not deprived of workers' compensation benefits, and is not created as a

16   source of contribution to insurance carriers, or self-insured, or legally insured employers." Cal.

17   Lab. Code § 2716(b).  "The language of this subdivision indicates that the primary concern of the

18   Legislature was to create a source of benefits to the employee who otherwise would receive no

19   benefits because of the failure or refusal of his or her employer to obtain workers' compensation

20   liability coverage."  DuBois, 5 Cal.4th at 389.

21   In Rinaldi v. Workers' Comp. Appeals Bd., 199 Cal.App.3d 217 (1988), the court

22   addressed the purpose for which the UEBTF was created.

23      The Fund was created to ensure that workers employed by illegally uninsured
         employers are not deprived of workers' compensation benefits. (Lab.Code, §
24       3716, subd. (b).) Although the Fund's obligation is, to a large extent, coextensive
         with that of the uninsured employer (Lab.Code, §§ 3715, 3716), once the Fund
25       pays the entire award, the Fund becomes subrogated to the employee's claim and
         may proceed directly against the uninsured employer to recover the entire amount
26       of the award from him. (Lab. Code, §§ 3717, 3719; Flores v. Workmen's Comp.
         Appeals Bd. (1974) 11 Cal.3d 171, 178, 113 Cal.Rptr. 217, 520 P.2d 1033.) But
27       should the employer prove to be insolvent, the Fund will bear the entire financial
         burden of the award. (Id., at p. 178, 113 Cal.Rptr. 217, 520 P.2d 1033.)

28

1   Rinaldi, 199 Cal.App.3d at 224-25.  The court also recognized the strong public policy to protect

2   the public and the injured worker.  Id. at 225.

3          Similarly other courts have recognized that it is the public policy of California to ensure

4   that workers who are employed by illegally uninsured employers are not deprived of worker's

5   compensation benefits.  Valdez v. Himmelfarb, 144 Cal.App.4th 1261, 1267 (2006); Ortiz v.

6   Workers' Comp. Appeals Bd., 4 Cal.App.4th 392, 396 (1992).  The UEBTF serves the purpose

7   of the workers' compensation system "1) to ensure that the cost of industrial injuries will be part

8   of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited

9   compensation for an employee's work injuries, regardless of fault, as an inevitable cost of

10  production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer

11  from tort liability for his employees' injuries."  S.G. Borello & Sons, Inc. v. Department of

12  Industrial Relations, 48 Cal. 3d 341, 354 (1989).

13         The Legislature established the UEBTF as part of the comprehensive workers'

14  compensation system to ensure that all workers in California are able to receive benefits in the

15  event they are injured while working.  The UEBTF addresses a matter of statewide concern, that

16  of protecting the employees in the state if their employer fails to comply with the law requiring

17  them to provide workers' compensation insurance.

18         The UEBTF does not have discretion to approve or deny a claim submitted for benefits or

19  to determine the amount of the employee's award.  The director makes a determination on the

20  amount of benefits owed and that an employer is illegally uninsured.  Cal. Lab. Code §§ 3715(c),

21  (d), and (e).  It is only after an employer fails to pay the compensation required that the employee

22  may make a claim on the UEBTF for benefits.  Cal. Lab. Code § 3716(a).  While the UEBTF has

23  the ability to appeal the decision, it is limited by statute in its ability to bring suit.  Cal. Lab.

24  Code § 3716.3; 3717; 3719; 3732.  The UEBTF is required to report on the compensation paid

25  from the fund to the Legislature on an annual basis.  Cal. Lab. Code § 3716.5.

26         The Legislature has provided that in times of budgetary restrictions or impasse, funds

27  from the UEBTF may be advanced to the Workers' Compensation Revolving budget to meet

28  expenses.  Cal. Lab. Code § 62.5(b)(3).  Finally, the Legislature has the ability to access the

1   funds in the UEBTF and in 2011 a bill was enacted authorizing a loan of $4.3 million from the

2   UEBTF to the State Public Works Enforcement Fund for the startup needs of the Labor

3   Compliance Monitoring Unit to monitor and enforce prevailing wage compliance on any public

4   works projects.  Assemb. Bill. 436, 2011-2012 Regular Session § 6 (Cal. 2011).  The State has

5   exercised substantial control over the UEBTF.

6   The Court finds that the UEBTF performs a central government function and this factor

7   weighs in favor of finding that the UEBTF is an arm of the state.

8   3.   Whether UEBTF Can Sue and Be Sued

9   Defendants briefly address the limited ability of the UEBTF to bring suit.  (ECF No. 7 at

10  6.)  Plaintiff argues that the fact that the UEBTF is "commonly joined in cases involving

11  insurance coverage of employers" favors the conclusion that the Eleventh Amendment does not

12  apply.  (ECF No. 15 at 13.)

13  Plaintiff cites to Aetna Casualty & Surety Company v. Aceves (Aetna Casualty), 233

14  Cal.App.3d 544, 552 (1991), for the proposition that the UEBTF is commonly joined as a party

15  in lawsuits.[4]  In Aetna Casualty, an injured employee appealed from an order granting summary

16  judgment and finding that the insurance company did not have a duty to defend.  233 Cal.App.3d

17  at 547.  The issue being decided was whether the Workers' Compensation Appeals Board had

18  exclusive jurisdiction over the action which the insurance company had brought against multiple

19  defendants, including the injured employee.  Id. at 548-49.  The injured employee had also

20  argued that the court had abused its discretion by exercising jurisdiction over the case because of

21  the possibility of inconsistent judgments.  Id. at 554.  The court in Aetna Casualty found that the

22  trial judge did abuse its discretion by not joining the UEBTF in the suit prior to issuing

23  declaratory judgment due to the prejudice to the injured employee.  Id. at 555-56.

24  Upon review of the case law, it is clear that the UEBTF is commonly joined by the

25  injured worker who is seeking to recover benefits where there is an allegation that the employer

26

27  [4] Plaintiff describes the procedural posture of Aetna Casualty by stating that the insurer appealed the decision.
    However, in Aetna Casualty it was the employee appealing the decision granting summary judgment and the issue
    addressed by the court was the prejudice to the injured employee, and not the insurer which is not at issue here.

28  Aetna Casualty, 233 Cal.App.3d at 555-56.

is illegally uninsured.  Plaintiff does not reference any case, nor does the Court find a case, in which an insurance company has brought an action against the UEBTF.  This is consistent with the statute which provides that the UEBTF was created to be ensure that workers whose employers were illegally uninsured receive workers' compensation benefits and the fund is joined where the employer alleged to be uninsured has appeared in the action.  Cal. Lab. Code ¶¶ 3716(b) and (c).  The UEBTF is to furnish information on "the identities, legal capacities, and addresses of uninsured employers known to the director upon request of the board or upon a showing of good cause by the employee or the employee's representative."  Cal. Lab. Code 3716(d)(4).

Further "it is apparent the Legislature intended to define the liability of the [UEBTF] for the payment of an award as derivative rather than vicarious, and to render the employer primarily responsible for the payment of the award even in a case in which the [UEBTF] has participated and ultimately may be required to pay the award."  DuBois, 5 Cal.4th at 390; see also Kirby v. Gonzalez, No. ADJ843966, 2013 WL 6988609, at *2 (Cal. W.C.A.B. Dec. 13, 2013) (citing DuBois, 5 Cal.4th at 390) ("Section 3716(d) provides that an applicant whose employer has failed to secure the payment of compensation may seek to join [UEBTF] as a derivative defendant if jurisdiction has been perfected over the uninsured employer.  The employer remains the defendant and [UEBTF] is a derivative defendant only, and has no direct liability on the case.").

Once a finding and award that is subject to a demand on the UEBTF has become final, it becomes a liquidated claim for damages against the uninsured employer, and the Director may institute a claim for damages against the employer in the amount of the award.  Cal. Lab. Code § 3717.  Pursuant to statute, the UEBTF is able to recover damages from any person or entity whose tortious act or omission proximately caused the injury or death of the employee."  Cal. Lab. Code § 3732.  The UEBTF's ability to bring suit is limited by statute to individuals who contributed to the injury of the worker or to enforce such a judgment.  See Cal. Lab. Code §§ 3716.3, 3717, 3726, 5806.  Additionally, any recovery in excess of the benefits awarded to the employee is paid to the injured employee or his representative.  Cal. Lab. Code § 3716.2.

1    Given the limited ability of the UEBTF to sue or be sued, the Court finds that this factor

2    does not weigh in favor of or against finding UEBTF an arm of the state.

3         4.    Whether UEBTF Can Take Property in its Own Name

4         Plaintiff concedes that the UEBTF cannot take property in its own name, but argues that

5    it holds property in trust distinct from the state.  (ECF No. 15 at 13.)  However, the DIR has

6    "possession and control of all records, books, papers, offices, equipment, supplies, moneys,

7    funds, appropriations, land, and other property, real or personal, held for the benefit or use of all

8    commissions, divisions, and offices of the department and the title to all such property held for

9    the use and benefit of the State is hereby transferred to the State."  Cal. Lab. Code § 58.  The

10   UEBTF does not hold property in its own name.  The DIR is a state agency which is authorized

11   to acquire or hold property to be used by the UEBTF.  See Cal. Gov. Code §§ 11005.3, 14600.

12        The UEBTF has not been granted the power to take property in its own name, and it is

13   subject to state oversight and control.  Further, as discussed above, California law provides that if

14   the UEBTF ceases to exist all of its assets will be transferred to the state's general fund.  Cal.

15   Gov. Code § 16346.  This factor weighs in favor of finding that the UEBTF is an arm of the

16   state.

17        5.    UEBTF's Corporate Status

18        Plaintiff argues that although the UEBTF is not a corporation, it is considered a public-

19   enterprise fund.  (ECF No. 15 at 13.)  Plaintiff relies on In re ATG, Inc., 311 B.R. 810 (N.D. Cal.

20   2004), which addresses the status of the State Compensation Insurance Fund ("SCIF"), a "self-

21   supporting and a self-operating insurer for the purpose of offering workers' compensation

22   insurance on the same basis and in competition with other insurers" id. at 811, to support the

23   argument that the UEBTF is not entitled to immunity.  However, the UEBTF is not comparable

24   to the SCIF.  The SCIF is an insurance company which competes with private insurers and is

25   organized as a public enterprise fund.  Cal. Ins. Code § 11773.

26        The UEBTF receives its funding from surcharges levied upon all employers, Cal. Lab.

27   Code §62.5(f)(1), penalties which were assessed against uninsured employers, as well as from

28   state tax revenues.  DuBois, 5 Cal.4th at 389.  It is not a source of contribution to insurance

15

1   carriers, or self-insured, or legally insured employers.  Cal. Lab. Code § 3716(b).  Pursuant to

2   California law, an insurance company is defined as "any person engaging in, or proposing or

3   attempting to engage in, any transaction or kind of insurance or surety business and any person

4   or group of persons who may otherwise be subject to the administrative, regulatory, or taxing

5   authority of the commissioner."  Cal. Ins. Code § 729(a).  The UEBTF is not an insurance

6   company and it was not established as a public enterprise fund but as a special trust fund account

7   to ensure that California employees would be protected when they were injured while in the

8   employment of an illegally uninsured employer.  Cal. Lab. Code § 62.5(b)(1).

9          Plaintiff relies on Kostelic v. Bernardi, 538 F.Supp.620 (N.D. Ill. 1982) and Jali v.

10  Workers' Compensation Bd of the State of N. Y., 1986 WL 6291 (W.D. N.Y 1986), to support

11  their argument that the UEBTF is not an arm of the state.  The Kostelic court stated without any

12  analysis that the Illinois Department of Labor is not entitled to Eleventh Amendment immunity

13  because the benefits are paid from a trust fund contributed solely by private employers in the

14  State of Illinois.  Id. at 622.  The arm of the state finding in Jali was based on the finding that the

15  fund was a self-supporting fund more closely equated to an insurance company than a state

16  agency.  1986 WL 6291, at *2.  As discussed above, the UEBTF is not an insurance company,

17  and the Court does not find either of these cases persuasive.

18         The State, in creating the UEBTF clearly defined the function and scope of the UEBTF to

19  act.  The UEBTF pays the award to the employee once a finding is made by the Director that the

20  employer is illegally uninsured and the UEBTF's ability to sue is limited to actions against the

21  parties liable for causing the injury and recovery of awards from the employer or other

22  individuals who contributed to the injury.

23         The state has not granted the UEBTF corporate status and this factor weighs in favor of

24  finding that the UEBTF is an arm of the state.

25         6.   The UEBTF is an Arm of the State Entitled to Eleventh Amendment Immunity in
             this Action
26

27         Weighing the factors to be considered to determine if the UEBTF is an arm of the state

28  for the purposes of Eleventh Amendment immunity, the Court concludes that the UEBTF is an

1   arm of the state.   See also Arya v. CalPERS, 943 F.Supp.2d 1062 (E.D. Cal. 2013) (finding

2   CalPERS is arm of state for purposes of Eleventh Amendment immunity).   In making this

3   determination, the Court considers the character of the funds, the purpose of UEBTF serves a

4   central government function, the corporate status of UEBTF, and the inability of UEBTF to take

5   property in its own name, as well as the purpose for which this action was brought.   Therefore,

6   the UEBTF is entitled to immunity under the Eleventh Amendment for the purposes of this

7   action; and Defendant UEBTF's motion to dismiss is GRANTED on this ground.

8         **C.**     **Whether Defendant Baker is Sued in her Individual Capacity**

9        Since the Court finds that Plaintiff's claim against Defendant UEBTF is precluded by

10   Eleventh Amendment immunity, Plaintiff is also precluded from asserting a claim against

11   Defendant Baker in her official capacity.   Natural Resources Defense Council, 96 F.3d at 422.   In

12   the opposition to the motion to dismiss Plaintiff contends that Defendant Baker is being sued in

13   her capacity as trustee, not in her official capacity and therefore she is being sued in her

14   individual capacity.   (ECF No. 15 at 13.)

15        Plaintiff cites Price v. Akaka, 928 F.2d 824 (9th Cir. 1990), for the proposition that

16   Defendant Baker is sued in her individual capacity.   In Price the plaintiff brought claims against

17   the trustees of the Office of Hawaiian Affairs for a violation of 42 U.S.C. § 1983.   In a section

18   1983 action, a plaintiff seeking damages is presumed to be suing the defendants in their

19   individual capacities because official capacity suits are equivalent to suits against the state and

20   are barred by the Eleventh Amendment.   Price, 928 F.2d at 828.   Since the plaintiff was seeking

21   damages, the court determined that the suit was brought against the trustees in their individual

22   capacities.   Id.   Price does not hold that suits against trustees are individual capacity suits.

23        In determining the capacity in which Plaintiff brings claims against Defendant Baker, the

24   court looks to "the basis of the claim asserted and the nature of relief sought."   Price, 928 F.2d at

25   828.   Plaintiff alleges that Defendant Baker is the Director of the DIR and therefore is Trustee of

26   the UEBTF.   (Compl. ¶ 5, ECF No. 1.)   Plaintiff seeks a declaration that it has no duty to defend

27   or indemnify Defendant Halajian for any portion of Mr. Ledger's worker's compensation claim.

28   (Id. at p. 4.)

1    Defendant Baker is being named in this action solely based upon her position with the

2    DIR and Plaintiff is seeking to bring Defendant UEBTF into this action in order to have them

3    bound by any declaratory relief granted in this action.   Based upon the allegations in the

4    complaint, it is clear that Defendant Baker is being sued in her official capacity as Director of the

5    DIR.   Boland v. Cecil, 65 Cal.App.2d 832, 840 (1944) (reference is only to official title of

6    defendant and language of pleading leaves no doubt defendants are sued in official capacities).

7    California has enacted legislation to immunize governmental officials from lawsuits

8    challenging discretionary acts within the scope of the official's authority.   Caldwell v. Montoya,

9    10 Cal.4th 972, 982 (1995) (citing Cal. Gov. Code § 820.2).   Defendant Baker is being joined in

10   this action based upon discretionary acts she will take in her position as Director of the DIR.

11   Further, Plaintiff cannot seek to compel the state to act by suing Defendant Baker in her

12   individual capacity.   Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 695 (1949).

13   Based on the foregoing, Defendant Baker's motion to dismiss is granted.

14   **D.      Whether Defendant UEBTF is a Necessary Party to this Action**

15   Plaintiff contends that Defendant UEBTF is a necessary party to this action.   Plaintiff is

16   seeking declaratory judgment under the Declaratory Judgment Act which permits a court to

17   declare the rights and other legal relations of interested parties where an actual case or

18   controversy exists.   28 U.S.C. § 2201(a).   The issue Plaintiff is seeking to have this court decide

19   is whether a contract between Plaintiff and Defendant Halajian was valid requiring Plaintiff to

20   provide coverage for the injury to Defendant Halajian's employee.

21   Joinder of parties in this action is a procedural issue governed by the Federal Rules of

22   Civil Procedure.   Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102 125

23   (1968).   Whether Defendant UEBTF is a necessary party to this action is governed by Federal

24   Rule of Civil Procedure 19, which states provides that a party who will not deprive the court of

25   subject-matter jurisdiction must be joined if:

26         (A) in that person's absence, the court cannot accord complete relief among
           existing parties; or
27         (B) that person claims an interest relating to the subject of the action and is so
           situated that disposing of the action in the person's absence may:
28         (i) as a practical matter impair or impede the person's ability to protect the

1    interest; or
2    (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

3    In determining if a party is indispensable under Rule 19, the court first must decide if the party is

4    necessary and then determine whether the party is indispensable so that the suit must be

5    dismissed.  Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990).

6         In determining if the party is necessary, the court must decide if complete relief is

7    possible among those already party to the suit, or alternately, whether the absent party has a

8    legally protected interest in the suit that will be impaired or impeded by its absence or expose the

9    parties to a risk of multiple or inconsistent obligations by reason of that interest.  Makah Indian

10   Tribe, 910 F.2d at 558; Dawavendewa v. Salt River Project Agr. Imp. And Power Dist., 276 F.3d

11   1150, 1155 (9th Cir. 2002).  If the party satisfies either of these alternative tests it is considered a

12   necessary party in this action.    Dawavendewa, 276 F.3d at 1055.    The necessary and

13   indispensable inquiry under Rule 19 is practical and fact specific and designed to avoid the harsh

14   results of rigid application.  Hendricks v. Bank of America, N.A., 408 F.3d 1127, 1136 (9th Cir.

15   2005).

16        1.    Complete Relief Among Those Already Parties in this Action

17        The issue of whether complete relief is possible between the parties "is concerned with

18   consummate rather than partial or hollow relief as to those already parties, and with precluding

19   multiple lawsuits on the same cause of action."  Northrop Corp. v. McDonnell Douglas Corp.,

20   705 F.2d 1030, 1043 (9th Cir. 1983).

21        Plaintiff is requesting declaratory relief regarding the insurance policy issued to

22   Defendant Halajian.  A nonparty to a commercial contract is generally not a necessary party to

23   adjudicate the parties' rights under the contract.  Northrop Corp., 705 F.2d at 1044.  Defendant

24   UEBTF is not a party to the contract nor does it have any liability under the contract.  Therefore,

25   the Court is able to decide the issue presented without Defendant UEBTF being joined in this

26   action.

27        Plaintiff contends that it cannot receive complete relief because Defendant UEBTF would

28   have a right to equitable indemnification against Plaintiff if Defendant UEBTF could establish

19

1    that the policy affords coverage.  However, this argument fails to recognize that Defendant

2    UEBTF does not determine whether the policy affords coverage.  Defendant UEBTF only

3    provides coverage where the director determines that the employer is illegally uninsured.

4    Further, the statute only provides Defendant UEBTF with the ability to sue to recover damages

5    from "any person or entity whose tortious act or omission proximately caused the injury or death

6    of the employee."  Cal. Lab. Code § 3732.

7            Finally, Defendant UEBTF's ability to appeal the decision to the Workman's

8    Compensation Board does not show that Defendant UEBTF can and does pursue carriers when it

9    believes they are liable.  Appealing the Workman's Compensation Board's decision is not

10   pursuing a lawsuit against the party.  Plaintiff does not provide any authority to support their

11   argument that Defendant UEBTF could file a lawsuit to recover damages from Plaintiff.  Further,

12   at the hearing Plaintiff argued that in order to do such there would have to be a change in law or

13   a new court decision recognizing such ability.  Such speculative arguments do not make

14   Defendant UEBTF a necessary party to this action.  The Court finds that Defendant UEBTF is

15   not a necessary party to obtain complete relief for the parties that are presently before the Court.

16           2.    Legally Protected Interest

17           Alternately, Defendant UEBTF would be a necessary party if it has a legally protected

18   interest in this action.  The legally protected "interest must be more than a financial stake and

19   more than speculation about a future event."  Makah Indian Tribe, 910 F.2d at 558 (internal

20   citations omitted).  The fact that the outcome of litigation may have some financial consequence

21   for a non-party is not sufficient to make the non-party necessary in the action.  Cachil Dehe Band

22   of Wintun Indians of the Colusa Indian Community v. California ("Colusa"), 547 F.3d 962, 972

23   (9th Cir. 2008).  If the court finds that a legally protected interest exists, the court must determine

24   whether the interest of the absent party will be impaired or impeded by the suit.  Makah Indian

25   Tribe, 910 F.2d at 558.

26           In deciding if UEBTF is a necessary party, the court determines whether Defendant

27   UEBTF is claiming a legally protectable interest in the subject of the litigation such that a

28   decision without Defendant UEBTF would impair or impede its ability to protect that interest or

20

1  if Plaintiff or Defendant Halajian will risk multiple or inconsistent obligations due to that

2  interest.  Neither party asserts that Defendant UEBTF has a protectable interest in the litigation.

3      While Plaintiff argues that Defendant UEBTF is a necessary party citing cases referring

4  to insurance companies and third party claimants, Defendant UEBTF is not such a party.  Any

5  interest of Defendant UEBTF is a speculative financial stake in this litigation.  Defendant

6  UEBTF has no liability until there is a finding by the Director that Defendant Halajian is illegally

7  uninsured; Defendant Halajian fails to pay a claim; and Mr. Ledger files a claim for Defendant

8  UEBTF to cover his award of damages.  "Speculation about the occurrence of a future event

9  ordinarily does not render all parties potentially affected by that future event necessary or

10 indispensable parties under Rule 19." Northrop Corp., 705 F.2d at 1046.

11     Finally, under Rule 19(a)(B)(ii) a party is required to be joined if the result of the current

12 litigation would subject them to inconsistent obligations.  "Inconsistent obligations are not the

13 same as inconsistent adjudications or results." Colusa, 547 F.3d at 976 (internal punctuation and

14 citations omitted).  "Inconsistent obligations occur when a party is unable to comply with one

15 court's order without breaching another court's order concerning the same incident.  Inconsistent

16 adjudications or results, by contrast, occur when a defendant successfully defends a claim in one

17 forum, yet loses on another claim arising from the same incident in another forum." Id. at 976

18 (citations omitted).

19     Plaintiff is seeking a declaration that it does not have a duty to defend or indemnify

20 Defendant Halajian for the injuries to Mr. Ledger.  It is not Defendant UEBTF who determines

21 whether the policy requires Plaintiff to defend or indemnify Defendant Halajian.  These issues,

22 as well as whether Defendant Halajian is illegally uninsured, are decided by the Director in the

23 Workman's Compensation proceedings.[5]  Since these issues are not decided by Defendant

24 UEBTF, the failure to join Defendant UEBTF in this action will not subject either Plaintiff or

25 Defendant Halajian to inconsistent obligations.

26     Based upon the factors to be considered, the Court finds that Defendant UEBTF is not a

27

28 ───────────────
   [5]  In the complaint the Director has not been sued in her capacity over the Workman's Compensation Board.

necessary party to this action.  Therefore, there is no reason for the Court to consider the factors regarding indispensable parties to an action.

### E.  Whether an Actual Case or Controversy Exists Between Plaintiff and Defendant UEBTF

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground that no actual controversy exists between Plaintiff and Defendants Baker and UEBTF.  (ECF No. 7 at 7-8.)  Plaintiff responds that an actual controversy exists as Defendant Halajian has admitted that he failed to pay the policy premium and asserts that the notice of cancelation was sent to the wrong address.  (ECF No. 15 at 6, 10.)  At the June 25, 2014, the Court requested argument on whether an actual case or controversy existed between Plaintiff and Defendant UEBTF and allowed the parties to address the issue of Plaintiff's standing to bring suit against Defendant UEBTF.  The parties filed supplemental briefing on the issue.

Federal courts are courts of limited jurisdiction and in considering a request for relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy.  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982).

For each form of relief sought in federal court, Plaintiff must establish standing. Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010), cert.denied, 131 S. Ct. 503 (2010). This requires Plaintiff to "show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to challenged conduct of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury."  Summers v. Earth Island Institute, 555 U.S. 488, 493 (2009) (citation omitted); Mayfield, 599 F.3d at 969 (citation omitted).

Plaintiff is seeking declaratory judgment under the Declaratory Judgment Act which permits a court to declare the rights and other legal relations of interested parties where an actual case or controversy exists.  28 U.S.C. § 2201(a).  The issue Plaintiff is seeking to have this court decide is whether Plaintiff is required to provide coverage for the injury to Defendant Halajian's

1   injured employee.  Plaintiff has sufficiently pled allegations to show that an actual case or

2   controversy exists in this action in regards to Defendant Halajian as the injury at issue here

3   relates to the contract between Plaintiff and Defendant Halajian.  However, Defendants Baker

4   and UEBTF are not parties to the contract, nor are they involved in the contractual dispute.  The

5   fact that the employee's injury may ultimately be covered by the UEBTF, if it is found that

6   Defendant Halajian was uninsured, does not create a case and controversy between Plaintiff and

7   Defendants Baker and the UEBTF.

8          Plaintiff argues that a justifiable controversy exists if the plaintiff has a "reasonable

9   apprehension" that he will be subject to liability.  The cases cited by Plaintiff do not support the

10  contention that a third party may be named as a defendant in an action who is not part of the

11  controversy.   In MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), the court was

12  determining if a patent licensee was required to break or terminate its license agreement prior to

13  challenging the validity of the underlying patent.  The court held that the patent licensee does not

14  have to break or terminate an agreement before seeking declaratory judgment that an underlying

15  patent is invalid, unenforceable, or not infringed.  Id. at 137.  The patent licensee has an interest

16  in the patent that is sufficient to establish a case and controversy against the patent holder.

17         Clearly, Plaintiff here has an actual case and controversy regarding whether the policy

18  purchased by Defendant Halajian had lapsed prior to Mr. Ledger's injuries being sustained and

19  whether they are required to cover the injuries to Mr. Ledger.  Therefore, Defendant Halajian is a

20  proper party to this action.  Aetna Casualty, 233 Cal.App.3d at 552.  However, MedImmune, Inc.

21  does not address the issue presented here, whether Defendants Baker and the UEBTF can be

22  properly joined in this action on the basis that Defendant UEBTF may ultimately be liable if the

23  Director finds that Defendant Halajian is illegally uninsured, Defendant Halajian fails to pay and

24  award; and a claim is submitted by Mr. Ledger.

25         Similarly in Progressive Cas. Ins. v. Dalton, No. 2:12-cv-00713-MCE-CKD, 2012 WL

26  6088313, *4-5 (E.D. Cal. Dec. 6, 2012), an insurance company who carried a liability policy on

27  a bank's directors and officers brought suit seeking a declaratory judgment that they were not

28  liable for the bank's losses.  Id. at *1.  The Federal Deposit Insurance Corporation ("FDIC")

1   became the receiver of the Bank.  Id.  The FDIC asserted a claim for $23 million against the

2   directors and officers of the bank.  Id.  The FDIC moved to dismiss the complaint until it had

3   completed its investigation.  Id. at 4.  Since the FDIC was seeking damages from the bank

4   officers, the court found that the insurance company could reasonably expect that it could be

5   subject to damages by the acts of the FDIC.  Id. at *5.

6          This action is distinguishable from Progressive Cas. Ins. as the UEBTF is not a party to

7   any actions being taken that would impose liability upon Plaintiff.  Plaintiff argues that because

8   there is a very strong possibility that Mr. Ledger will seek compensation from the UEBTF, the

9   UEBTF may look to other sources of recovery such as Plaintiff to support the argument that

10  Plaintiff has a reasonable apprehension of injury.  However, to state a case or controversy the

11  threat to Plaintiff must be actual and imminent, not conjectural or hypothetical.  Mayfield, 599

12  F.3d at 969

13         Plaintiff argues that there is a "reasonable apprehension" that it will be subject to liability

14  because the UEBTF could bring an action to recover damages should it later be determined that a

15  policy did exist.  UEBTF's obligation to cover Mr. Ledger's claim does not arise unless the

16  Worker's Compensation Board makes a finding that Defendant Halajian is an uninsured

17  employer.  See Dubois, 5 Cal.4th at 394 (the UEBTF has no liability for benefits until after the

18  formal proceeding and the employer has failed to act.)  Plaintiff does not have "a real and

19  reasonable apprehension" that he will be subject to suit.  Societe de Conditionnement en

20  Aluninium v. Hunter Engineering Co., 655 F.2d 938, 944 (9th Cir. 1981) (real and reasonable

21  apprehension required that plaintiff will be subject to liability).

22         Further, at the June 25, 2014 hearing, Plaintiff argued that if an award is paid to Mr.

23  Ledger the UEBTF may look to other sources of recovery for reimbursement.  To support the

24  argument that there is a reasonable apprehension of injury, Plaintiff contends that the UEBTF

25  could bring an action against Plaintiff to recover the amount of any award paid by the UEBTF.

26  However, to state a case or controversy the threat to Plaintiff must be actual and imminent, not

27  conjectural or hypothetical.  Mayfield, 599 F.3d at 969.  To render the UEBTF "liable for

28  payment the statutory conditions must be strictly met."  Ortiz, 4 Cal.App.4th at 396.  Before the

1    UEBTF is obligated to cover an award, the Director of the DIR must determine that the employer

2    was prima facie illegally uninsured.  65A Cal. Jur 3d Work Injury Compensation § 669 (2014).

3    The UEBTF pays the award against an illegally uninsured employer once the award becomes

4    final and remains unpaid for ten days.  Cal. Lab. Code §§ 3710-32.  Under California law, the

5    UEBTF can obtain judgment against the uninsured employer, 65A Cal. Jur 3d Work Injury

6    Compensation § 670 (2014), and Plaintiff's citations to instances where the UEBTF appeals the

7    decision of the worker's compensation board does not show that the UEBTF can pursue a claim

8    against an insurance company once a finding is made that the employer is uninsured.

9         Plaintiff has failed to show that an actual case or controversy exists between the insurer

10   and Defendants Baker and UEBTF.  Defendants Baker and UEBTF's motion to dismiss shall be

11   granted on this ground.

12        **F.    Third Party Status**

13        Declaratory judgment is appropriate where there is an actual controversy between the

14   parties.  This is shown by "a substantial controversy, between parties having adverse legal

15   interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

16   Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273.  The question in this instance is

17   not whether a case or controversy exists between Plaintiff and Defendant Halajian, but whether

18   such a case or controversy exists between Plaintiff and Defendant UEBTF.  While Plaintiff

19   attempts to create a controversy between itself and UEBTF by alleging that the UEBTF could

20   bring suit against the insurance company to recover damages, Plaintiff fails to show that

21   Defendant UEBTF has the ability to pursue a claim against an insurer once a finding is made that

22   the employer is uninsured.  There is no actual controversy between UEBTF and Plaintiff.

23        Plaintiff relies on the controversy between itself and Defendant Halajian and argues that

24   because Defendant UEBTF could eventually be required to cover Mr. Ledger's claim they are

25   required to be joined in this action.  While there is no question that there is a controversy

26   between the parties to the contract, Defendant UEBTF is not a party to the contract at issue here.

27        Further, Defendant UEBTF is not an insurer and is therefore not properly joined in this

28   action on a theory that they would be alternately liable in this instance.  See Cal. Lab. Code §

25

1   3716(b); Cal. Ins. Code § 729(a).  Plaintiff cites cases where multiple insurance companies are

2   contingent requiring joinder, but while Defendant UEBTF may eventually pay a claim submitted

3   by Mr. Ledger, they do not have an actual or prospective claim against Plaintiff.[6]

4        Nor is Defendant UEBTF an injured party in this action who would qualify as a third

5   party claimant.  The Court finds that Plaintiff's reliance on these cases allowing declaratory

6   relief is misplaced.

7        **D.     Leave to Amend**

8        Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely

9   given when justice so requires.'"  Fed. R. Civ. P. 15(a).  "Leave to amend should be granted if it

10  appears at all possible that the plaintiff can correct the defect."  Lopez v. Smith, 203 F.3d 1122,

11  1130 (9th Cir. 2000) (internal citations omitted).   In this instance, the Court finds that the

12  deficiencies outlined above are not capable of being cured by amendment, and therefore leave to

13  amend should not be granted.  Noll v. Carlson, 809 F. 2d 1446, 1448-49 (9th Cir. 1987).

14       The Court finds that the deficiencies in Plaintiff's complaint cannot be cured by

15  amendment as Plaintiff cannot allege injury that is fairly traceable to these defendants.

16  Therefore, Defendants Baker and UEBTF shall be dismissed without leave to amend.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23

24  [6] Plaintiff cites to Small v. Days Transfer, Inc. 165 F.Supp. 929, 930-33 (W.D. Mich. 1958); Blacks v. Mosley
    Machinery Co., Inc., 57 F.R.D. 503 (E.D. Penn. 1972); Morelli v. Northwest Engineering Corp., 30 F.R.D. 522
25  (E.D. Wis. 1962); State of Maryland v. Baltimore Transit Co., 37 F.R.D. 34 (D. Md. 1965); for the proposition that a
    state fund is a necessary party in third party actions regarding damages for injured workers.  However in each of
26  these instances the fund that was determined to be the necessary party was the insurer which not the case in this
    action.  Further, in Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York, 762 F.2d 205 (2d Cir. 1985) the
27  court found that in a subrogation case the insurer and the insured are necessary parties, but clearly are not
    indispensable parties.  Id. at 208.  This supports the finding that Plaintiff and Defendant Halajian are necessary
28  parties, but does not address the issue here.  Defendant UEBTF could eventually be a subrogee of Mr. Ledger, not of
    any of the parties that are before the Court.

1

**V.**

2

**CONCLUSION AND ORDER**

3        Based on the foregoing, Defendants Baker and UEBTF's motion to dismiss is HEREBY

4    GRANTED; and Defendants Baker and UEBTF are dismissed from this action.

5

6    IT IS SO ORDERED.

7    Dated:   **July 31, 2014**                                    _____

8                                                    UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28